Staples, J.
The principal points in this case are discussed and decided in Henderlite v. Thurman, reported in 22 Gratt., p. 446. In that case, as in this, the contract for the purchase of the slaves was made subsequent to the emancipation proclamation of January 1st, 1863. In that, as in this, it was insisted that the slaves were free by force of that proclamation: that the considera-' tion had wholly failed, and the contract was contrary to *129 public policy. It is, therefore, only necessary to refer to that case and the opinion there found, for the views of this court in reference to these questions. This case, however, presents another point not discussed or decided in Henderlite v. Thurman, which is now to be considered and settled.
It seems that the plaintiff', George Eives, on the 2d of August 1865, received from the President of the United States a special pardon for all offences by him committed, arising from his participation in the rebellion, so termed. By the terms of this pardon it was “to begin or take effect from the day on which the said George Eives should take the oath prescribed in the proclamation of the President dated May 29th, 1865 ; and to be void and of no effect if the said George Eives shall hereafter, at any time, acquire any property in slaves, or make use of slave labor.” The oath here alluded to was taken by the plaintiff, and was to the purport that he “would thenceforth faithfully support, protect and defend the constitution of the United States, and the union of the States thereunder; and that he would, in like manner, abide by and faithfully support all laws and proclamations which had been made during the existing rebellion, with reference to the emancipation of slaves.”
The proposition of the defendants is, that the plaintiff', by accepting the pardon and taking this oath, agreed that he would recognize, and as far as he could, give effect to the emancipation of his slaves under the proclamation of the 1st of January 1863; and that he would maintain that they had become free on that day, and had all the while thereafter continued to be free persons, and not slaves. And it is insisted, that the present pretension of the plaintiff is wholly inconsistent with the obligation thus assumed; inasmuch as he now claims that the negroes sold by him to one of the defendants.. *130 wrere slaves after the 1st day of January 1863; and that a sale made by him subsequent to that day is valid, and should be enforced in his favor.
As no authorities directly bearing upon tl is question have been adduced on either side, it must be considered and discussed upon principle exclusively. In Henderlite v. Thurman this court held, that the emancipation proclamation of January 1st, 1863, if valid at all, was only so as a war measure; and as such it had no effect in regions beyond the control of the federal authorities; and that those slaves only were emancipated which came within the federal lines of occupation while that proclamation was in active exercise; that this was the construction given to that measure by Mr. Lincoln himself, by all the judges of the United States courts who had held the subject under consideration, and by a large majority of the State courts. If this point was correctly decided, if the negroes sold by the plaintiff, being in the county of Albemarle, were not embraced by the proclamation, beyond all controversy they were slaves at' the time of the sale, recognized as such by the parties, by the constitution of the United States, and the law's and constitution of Virginia. Nothing had then occurred, no act had been done, to impair the plaintiff’s right of property; and he was fully protected in his enjoyment and dominion by a competent military and civiL pow'er. The contract w'as, therefore, valid. The sale passed a clear legal title to the purchaser, and the plaintiff acquired a clear vested right to the purchase money.
A valid title having vested by the sale, no act the plaintiff might thereafter perform, no recognition by him of the validity of the proclamation, could affect that title, or interfere with the purchaser’s claim agaiust the government, if any he had, for compensation. The *131 defendant’s promise to pay is, therefore, in full force and effect, unless we are to assume that it has been extinguished by the mere fact that the plaintiff has taken upon himself certain duties and obligations to the federal government which do not concern the defendants, which entailed no loss and imposed no liabilities upon them.
If I rightly understand the argument of defendant’s counsel, they do not maintain that the contract is discharged by the plaintiff’s action. They seem to rely upon the principle of estoppel, as applicable to the case. Give, then, to the plaintiff’s oath, and his acceptance of the pardon, all the effect of the most conclusive estoppel: can the defendants claim the benefit of it? — can they rely upon it? They are clearly not bound by it. Tüey were no parties to the arrangement (if it may be so termed) between the government and the plaintiff. That arrangement was the result of a public policy inaugurated by the executive of the United States, to secure to the negro the freedom won for him by the federal arms. "When the war closed the government of the United States was not looking, to the previous status of the freedmen in the southern States. It was a matter of no concern whether they were emancipated by force of a proclamation, or by the conquest of the north. It was a fixed fact that the slaves were free, free by the results of the war. The institution of slavery being thus at an end, the object of the government was to prevent ever thereafter, even the agitation of the question of its reestablishment. Its measures did not look to the past, but to the future. They were wholly prospective in their operation, intended to protect the negro in the enjoyment of his freedom. For these ends the whole power, all the machinery of the federal government, was brought into requisition. One of the means adopted was to im *132 Iose ^errns upon those applying for executive clemency. The applicants were required to take an oath faithfully to abide by and support the laws and proclamations , . n , , j o which had been made with reference to the emancipa ^on slavesi and it was further provided, that if the applicant should thereafter at any time acquire any property whatever in slaves, or make use of slave labor, the pardon was to be- void and of no effect.
Construed by the light of surrounding circumstances, this provision or condition in the pardon clearly was not intended to exact from the applicant an admission that Ms slaves had become free in any particular way, or under any special law or proclamation; but that the sole object was to preclude any question in the future as to the right of these slaves to freedom; and to secure that right beyond the reach of cavil or controversy. In this sense, and this alone, it seems tome, the plaintiff, in common with others who applied for pardons, was required to support the laws and proclamation in reference to emancipation.
It is not to he presumed that the President of the United States intended, as a condition of Ms clemency, to exact from the citizen an admission which might perchance involve him in a perplexing controversy with his former slaves, concerning their right to compensation for services rendered after the proclamation was issued. ISTor is it to be presumed it was his purpose to impose conditions which would constrain one party to surrender valuable rights, originating in contracts valid when made, and the enforcement of which can in no manner affect the rights and privileges of the freedman, or the well established policy of the government. If such was the purpose of the President — and such is the legal operation and effect of the oath taken by the plaintiff— then I think the courts would not hesitate to declare the *133 condition annexed to the pardon a mere nullity The President of the United States is authorized to gi’ant conditional pardons. A performance of the condition renders the pardon absolute, and entitles the party to a full discharge from all the penalties and disabilities attached to the offence. On the other hand, a failure to perform the condition renders the pardon utterly void; and the offender is remitted to his former condition. But the President is not authorized to annex to his pardon a condition that is impossible, or contrary to law. In such case the pardon is absolute, and the condition void. If the proclamation was the exercise of a constitutional power by the President, and its effect was to confer freedom upon all the slaves in the designated States, it is not perceived how the oath of the plaintiff could give to it any additional obligation. It is binding upon him with or without this oath. If, on the contrary, it was illegal and unconstitutional, no oath the plaintiff' might take, no promise he might make to the executive to support it, can preclude him from asserting his l’ight of action growing out of a valid contract with another citizen. And it may be safely said, that the promise to support an unconstitutional act would be void, and the pardon absolute; or the promise not being observed, the condition not being performed, the pardon is void, and the grantee remains in the condition he was when the par-, don was granted. And it would seem to be very clear, that in no case was the President authoi’ized to annex to his pardon a condition requiring the offender to support an act which is an infringement of the constitution and a violation of the rights of property.
But waiving all this, let it be conceded that the plaintiff is absolutely precluded, by his acceptance of the pardon, from contesting the validity of the proclamation, or the emancipation of his slaves thereunder, I repeat what *134 has been before merely suggested, the defendants are in no condition to take advantage of the estoppel. When an estoppel is relied on to conclude a party, from claiming a clear, well ascertained legal right, he who claims the benefit of such estoppel, ought himself to be bound by it. If any proposition of law can be regarded as well settled, it is this. It is only necessary to cite a single authority. In Deery v. Cray, 5 Wall. U. S. R. 795, 803, the Supreme court of the United States say: “ That no person can rely upon an estoppel growing out of a transaction to which he was not a party nor a privy, and which in no manner touches his rights. There is no mutuality, which is a requisite to all estoppels. This (say the court) is precisely the case before us. The plaintiff claimed under Brent and his deed. Defendants claim nothing under that deed, and deny all connection with the title it proposes to give. They are strangers to it, and have no right to set up its recitals as estoppels.” It seems to me, therefore, that whatever may be the obligation of the plaintiff to the government, the defendants are in no condition to rely upon it as relieving them, or impairing plaintiff’s right to enforce the contract.
There is one other view, perhaps more satisfactory than any yet mentioned. If, as already suggested, the proclamation is to be regarded as a war measure, conferring freedom only upon such slaves as came under federal control during the war, an oath to support that proclamation cannot, by any process of reasoning, be tortured into an obligation to maintain or agree that hose slaves not under federal control were thereby emancipated ; because such was not the legal operation and effect of the measure. Let it be conceded that the plaintifl’ is estopped to deny the constitutionality of the proclamation: surely he is not therefore precluded from *135 an enquiry into the extent of its operation, and from showing, according to a fair interpretation, that his slaves were not within its influence and operation. Whether they were embraced by it, is a question for the courts. If they were not so embraced — if, indeed, being wholly within the Confederate lii. es, they were not emancipated, how is it possible to hold the plaintiff is compelled by his oath to acknowledge that they were in fact emancipated? This would be to deprive him of all claim to compensation for his property, because he has assumed an obligation to support a measure which in no way affected his title. The whole extent of the plaintiff’s oath is, to support the proclamation, as interpreted by the courts. When he has done that he has fulfilled all the conditions of his pardon. And this court having held, in Henderlite v. Thurman, that the proclamation did not affect slaves situated as those belonging to the plaintiff, it must follow, according to this view, there is nothing in the pardon, or in the oath taken by the plaintiff, to preclude him from maintaining that he had a valid title at the time of sale, and that his slaves were not emancipated by operation of that measure.
I have thus given this case a somewhat extended consideration, not because in my judgment it deserved it, but from a feeling of respect to the opinion of the Circuit court, and the views of able counsel, who seem to have entire confidence on the point; and because it is understood the case is to be taken hence to the Supreme Court of the United States.
For the reasons stated, the judgment must be reversed, and the cause remanded to the Circuit court, to be proceeded with in accordance with the principles herein announced.
*136 The other judges concurred in the opinion of Staples, J.
The judgment was as follows:
This cause, which is pending in this court, at its place of session at Staunton, having been fully heard, but not determined, at the said place of session : This day came here the parties, by their counsel: and the court having maturely considered the transcript of the record of the judgment aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the judgment of the said Circuit court, in sustaining the defendant’s demurrer to the plaintiff’s declaration, and each and every count thereof, is erroneous : Therefore, it is considered, that the same be reversed and annulled; and that the defendant in error, out of the assets of his testator in his hands to be administered, pay to the plaintiff in error his costs by him expended in the prosecution of his writ of error and supersedeas aforesaid here.
And this court, proceeding to render such judgment as the said Circuit court ought to have rendered on said demurrer to the plaintiff’s declaration, and each and every count thereof, is further of opinion, that said declaration, and each and every count thereof, is sufficient in law for the plaintiff to have and maintain his action against the defendant: And, therefore, it is further considered by the court here, that said demurrer to the declaration, and each and every count thereof, be overruled; and that this cause be remanded to the said Circuit court, for further proceedings to be had therein. And it is ordered, that this order be entered' on the order book here, and be forthwith certified to the clerk of the court where the cause is *137 pending, as aforesaid; who shall enter the same on his order book, and certify it to the clerk of the said Circuit court of Albemarle county.
Judgment reversed.